## Commonwealth v. McCalla

*Bernard E. DiJoseph*, District Attorney, for Commonwealth.

*William F. Fox*, for defendant.

DANNENHOWER, P. J., July 24, 1956.—Defendant has filed a motion to quash an information, warrant and transcript from a justice of the peace charging her with violations of sections (*a*) and (*b*) of The Vehicle Code of May 1, 1929, P. L. 905, art. X, sec. 1025, as amended by the Act of June 22, 1931, P. L. 751, and June 29, 1937, P. L. 2329, 75 PS §634, which provides (a) that the driver of any vehicle involved in an accident, resulting in injury or death to any persons, or damage to property shall immediately stop such vehicle at the scene of such accident and, (b) shall identify himself and exhibit his operator's license.

It has been agreed and conceded as a fact that defendant's vehicle struck the left rear of a parked, unattended vehicle.

The sole question raised is whether the operator of a vehicle involved in an accident resulting in damage to unattended property is guilty of a misdemeanor under section 1025 (*a*) of The Vehicle Code or of a summary offense under section 1025 (*d*) of the code, if he fails to stop at the scene of the accident.

The Commonwealth relies upon two cases decided in this county and one in Lycoming County (Commonwealth v. Wolfendale, 43 D. & C. 230 (1942) ; Commonwealth v. Baker, 53 D. & C. 702 (1945) ) and Commonwealth v. Yost, 88 D. & C. 555 (1954), wherein it was decided that "'subsections (*a*) and (*d*) are not in conflict, . . . the gist of the offense is the failure to stop, and it seems to us that it makes little or no difference if the property is attended or unattended' ".

Counsel for defendant depends upon the decision in Commonwealth v. Kane, 38 D. & C. 480 (1940), wherein President Judge Sheely, of Adams County, in a well reasoned and sound opinion, held that since the amendment of June 29, 1937, P. L. 2329, of section 1025, it is no longer a misdemeanor under section (*a*) to fail to stop after involvement in an accident resulting in damage to *unattended* property. President Judge Kitts, of Erie County, reached the same conclusion in Commonwealth v. Krivonak, 46 D. & C. 109 (1942), and the court of Delaware County in a very able opinion by Judge Bretherick, Commonwealth v. Kornig, 81 D. & C. 243 (1952), decided that section 1025, subsections (*a*), (*b*), (*c*) and (*e*) of The Vehicle Code, as amended, deal with offenses committed by the driver of a vehicle with respect to *attended* property and subsection (*d*) relates to such offenses with respect to *unattended* property, and the operator of a vehicle involved in an accident resulting in damage to *unattended* property is guilty of a summary offense under section 1025 (*d*) of The Vehicle Code, but is not guilty of a misdemeanor under section 1025 (*a*).

In view of the apparent inconsistencies among our courts on this matter and because of the importance of the question involved, we quote the statute in its entirety as follows:

"(a) The driver of any vehicle involved in an accident, resulting in injury or death to any person or damage to property, shall immediately stop such vehicle at the scene of such accident.

"(b) The driver and owner, if present, of any vehicle involved in any accident, resulting in injury or death to any person or damage to property, shall give his name, address, and the registration number of his vehicle, and exhibit his operator's license to the person struck, or the driver or occupants of any vehicle involved, or the owner or custodian of any property involved, unless the person struck, or the driver of the vehicle or the custodian of the property involved, signifies that no injuries have been received or damages sustained, and shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment, if it is apparent that such treatment is necessary, or is requested by the injured person.

"(c) Whenever the driver of a vehicle is physically unable to give the information or assistance required in this section, and there are other occupants of the vehicle at the time of the accident who are physically able to give the information or assistance required in this section, then each of such other occupants shall fully reveal the identity of himself and the identity of the driver of the vehicle, and of the owner of the vehicle of which they were occupants, to the person struck, or to the driver or occupants of any vehicle involved, or to the owner or custodian of any property involved, and shall render to any such person injured in such accident, reasonable assistance, including the carrying of

such person to a physician or surgeon for medical or surgical treatment, if it is apparent that such treatment is necessary, or is requested by the injured person.

"(d) The driver of any vehicle, street car, or trackless trolley omnibus, which is involved in an accident with any vehicle or property which is unattended, shall immediately stop, and shall then and there either locate and notify the operator or owner of such unattended vehicle, or the owner or custodian of such unattended property, of the name and address of the driver and owner of the vehicle involved in such accident with the unattended vehicle or property, or shall leave in a conspicuous place, in or upon the unattended vehicle or property, a written notice, giving the name and address of the driver, and of the owner of the vehicle involved in such accident, and a statement of the circumstances thereof, and also shall, within twenty-four (24) hours, forward to the department a similar notice regardless of the amount of damage done to such unattended vehicle or property.

"(e) The operator of any street car or trackless trolley omnibus involved in an accident, resulting in injury or death to any person or damage to property, shall give his name and address to the person struck, or the driver or occupants of the vehicle involved, or the owner or custodian of any property involved, and shall render to any person injured in such accident, reasonable assistance, including the carrying of or the securing of carriage for such person to a physician or surgeon for medical or surgical treatment, if it is apparent that such treatment is necessary, or is requested by the injured person.

"Penalty.—Any person violating any of the provisions of subsections (a), (b) or (e) of this section, shall be guilty of a misdemeanor, and shall, upon conviction thereof in a court of quarter sessions, be sentenced to pay a fine of not more than two hundred

($200.00) dollars and costs of prosecution, or undergo imprisonment for not more than three (3) years, or suffer both such fine and imprisonment.

"Penalty.—Any person violating any of the provisions of subsection (c) or (d) of this section shall, upon summary conviction before a magistrate, be sentenced to pay a fine of twenty-five ($25.00) dollars and costs of prosecution, and, in default of the payment thereof, shall undergo imprisonment for not more than five (5) days."

The solution to the question here involved depends primarily on the interpretation and construction to be placed upon this section as a whole.

Subsection (a) imposes a duty upon drivers of vehicles to stop immediately at the scene of an accident in which they are involved. From a plain reading, it would appear that the mere failure to stop would constitute a violation of this subsection whether the property involved was attended or unattended.

Counsel for defendant urges, however, that subsection (d), which was added by the amendatory Act of June 29, 1937, P. L. 2329, implicitly modified and restricted the general purport of subsection (a) by providing that the driver "shall immediately stop" when involved in an accident with "property which is unattended."

There can be no doubt that subsections (a) and (d) are in conflict with each other. Accordingly, the statute must be reconstrued in its entirety and its dissident provisions must be reconciled and harmonized so as to obtain an ordered and integrated whole.

Section 63 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §§563 and 573, provides as follows:

"Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, the two shall be construed, if possible, so

that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail."

Applying this rule to the present case, we feel that the general provision in subsection (*a*) requiring all motorists involved in accidents to stop immediately at the scene of the accident, must yield to the specific provision contained in subsection (*d*) which delineates the duties incumbent upon a motorist involved in accidents with unattended property. This conclusion is inescapable when we view the statute in its entirety.

In construing a statute and in ascertaining the intent of the legislature, we are to avoid a result which is unreasonable or absurd: Altieri v. Allentown Officers' and Employees' Retirement Board, 368 Pa. 176. Yet, we fall into this very pitfall if we disregard the exception and limitation placed upon subsection (*a*) by the subsequent enactment of subsection (*d*). Thus, taking the Commonwealth's contention to its logical conclusion, we would be forced to hold that a motorist who strikes attended property and fails to stop at the scene of the accident would be guilty of a misdemeanor only, whereas the motorist who strikes unattended property, and flees the scene (certainly the less reprehensible of the two) would be liable for the double penalty of a magistrate's fine and sentence before the court of quarter sessions for a misdemeanor. Unattended property might be a utility pole, a wayside tree, a fireplug or a dog.

In interpreting an amendatory act, it is important to keep in mind that the legislature is presumed to know the prior construction which the courts have given the original act, and that there is an intent to

change the original act by creating new rights and liabilities or withdrawing those already contained in the act. Thus, any material changes or additions create the presumption that the legislature intends to effectuate a change in legal rights. See Sutherland, Statutory Construction, sec. 1930.

Further evidence of the intent of the legislature to distinguish between cases involving attended property and those involving unattended property can be perceived from an examination of subsections (d) and (e) as they apply to operators of streetcars and trackless trolley omnibusses. It is to be noted that subsection (e) was also added by the amendatory Act of 1937.

No provision was made to cover operators of streetcars and trackless trolley omnibuses until subsections (d) and (e) were added in 1937, leading us to presume that the statute, in its original form, did not extend to this class of persons. To hold otherwise would obviate the necessity of these additional subsections and compel us to conclude that the legislature, by its amendatory act, was performing a useless and meaningless gesture.

Under subsection (d), the driver of a streetcar or trackless trolley omnibus who fails to stop after becoming involved in an accident with *unattended* property is guilty of a summary offense only; while the same driver, if he fails to stop at the scene of the accident where the property involved was *attended* has committed a misdemeanor under subsection (e).

The statute, then, makes an unmistakable distinction between accidents where the property involved is attended and where it is unattended when the violator is the driver of a streetcar or trackless trolley omnibus. We cannot suppose, therefore, that the legislature meant to single out and give preferential treatment to persons operating commercial passenger carriers, and at the same time impose a double penalty upon

the motorist driving his private automobile. We are of the opinion that equal treatment was to be given to all classes of drivers. Moreover, it must be kept in mind that we have before us a penal statute, so that if ambiguities arise we must resolve them in favor of the accused.

In our opinion the inconsistent subsections could easily be reconciled and harmonized and the section could be construed as an integrated whole by treating subsection (a) as though the word "attended" was inserted before the word "property". An additional word or words may be interpolated where it is clearly necessary in order to effectuate the legislative intent: Catlin v. Pickett & Co., 262 Pa. 351, 354.

We are, therefore, impelled to the conclusion, notwithstanding the former decisions of this court, that since the amendment of 1937, section 1025, read and construed as a whole, was intended by the legislature to create separate offenses under subsections (a), (b), (c) and (e) involving *attended* property and under subsection (d) involving *unattended* property.

Since our legislature in defining the offense in subsection (d) used these words "shall immediately stop and" and has likewise distinguished between attended and unattended property in subsections (d) and (e) as to operators of any streetcar or trackless trolley omnibus, this shows a legislative intent and purpose to punish one who collides with unattended property and flees as a summary offender before a justice of the peace. Personally, the writer of this opinion believes that it is cowardly and reprehensible to inflict damage to one's unattended property and then flee without disclosing his identity, and a much more severe penalty than a $25 fine should be imposed when the offender is detected and caught. But this is a matter for legislative discretion and future amendment. The courts must interpret the law as it is written.

Since it clearly appears from the record that defendant is charged only with failure to stop after being involved in an accident with a parked unattended vehicle, a summary offense under section 1025 (*d*) of The Vehicle Code, as amended, the transcript charging a misdemeanor under section 1025 (*a*) and (*b*) must be quashed.

*Order*

And now, July 24, 1956, upon consideration of the foregoing case, it is ordered, adjudged and decreed that defendant's rule to show cause why the transcript in this case should not be quashed, be, and the same is hereby made absolute and the transcript is hereby quashed; county to pay costs.